IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| DR. SHARISSE STEPHENSON, MD, MBA, | § § § | |
| Plaintiff, | § § | |
| v. | § § | Case No. 3:25-cv-01734-L-BN |
| SUN LIFE ASSURANCE COMPANY OF CANADA, | § § § | |
| Defendant. | § § | |

_____

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
AND BRIEF IN SUPPORT**

_____

Bill E. Davidoff
State Bar No. 00790565
bill.davidoff@figdav.com
Attorney-in-Charge
Cameron E. Jean
State Bar No 24097883
cameron.jean@figdav.com
FIGARI + DAVENPORT, LLP
901 Main Street, Suite 3400
Dallas, TX  75202
Tel: 214.939.2000
Fax: 214.939.2090

ATTORNEYS FOR DEFENDANT

**TABLE OF CONTENTS**

I.    SUMMARY................................................................................................7

II.   THE PARTIES' LIVE PLEADINGS ...................................................8

III.  GROUNDS FOR SUMMARY JUDGMENT .........................................9

IV.  STANDARDS FOR RESOLUTION OF THE PARTIES' DISPUTE .....................10

V.   STATEMENT OF UNDISPUTED MATERIAL FACTS ......................................11

    A. The Group Disability Insurance Policy ...................................................11

    B. Sun Life Also Provides Bon Secours Certain Administrative Services related to Recordkeeping for Workplace Accommodations provided by Bon Secours to their Employees ................................................................12

    C. Plaintiff's Request for Workplace Accommodation .............................13

    D. Plaintiff's Claim for STD Benefits ........................................................14

    E. Sun Life Processes the Claim .................................................................14

    F. Sun Life Pays the Claim .........................................................................17

    G. Plaintiff Advises Sun Life She is No Longer Seeking STD Benefits ...................17

    H. This Lawsuit ...........................................................................................18

VI.  ARGUMENT AND AUTHORITIES ...............................................................19

    A. Plaintiff's Claims Fail as A Matter of Law ...........................................19

       1. Count I (Wrongful Denial of Benefits) Fails Because Sun Life Paid the Claim. 19

       2. Count II (ERISA Breach of Fiduciary Duty) Fails as a Matter of Law ............20

       3. Count III (Interference with Protected Rights Under ERISA) Fails .................22

       4. Plaintiff's State Law Claims (Counts IV-VIII & X) Fail Both Legally and Factually..............................................................23

       5. Count IX (Interference under the ADA) Fails Because Sun Life is Not a "Covered Entity" under the ADA and It Did Not Make any Employment Decision. ...........................................................27

VII.  CONCLUSION .......................................................................................29

ii

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aetna Health Inc. v. Davila*,
542 U.S. 200 (2004) ...................................................................................... 26, 27, 28

*Ambulatory Infusion Therapy Specialists, Inc. v. Aetna Life Ins. Co.*,
No. CIV.A. H-05-4389, 2006 WL 1663752 (S.D. Tex. June 13, 2006) ................ 27, 28

*Ariana M. v. Humana Health Plan of Texas, Inc.*,
884 F.3d 246 (5th Cir. 2018) (en banc) ................................................................ 13, 14

*Bodine v. Employers Cas. Co.*,
352 F.3d 245 (5th Cir. 2003) ....................................................................................... 25

*Clark v. Resistoflex Co.*,
854 F.2d 762 (5th Cir. 1988) ....................................................................................... 25

*Dr. Sharisse Stephenson, MD, MBA v. Bon Secours Mercy Health, Donna
Lohr, Vishwas Patel, MD, Anand Kapur, MD, and Michelle Pyka, MD.*,
No. 25-cv-1755-S ......................................................................................................... 11

*Ducre v. SBC–Southwestern Bell*,
402 F. Supp. 2d 766 (W.D. Tex. 2005) ......................................................................... 25

*Gearlds v. Entergy Serv., Inc.*,
709 F.3d 448 (5th Cir. 2013) ....................................................................................... 24

*Gray v. Winco Foods, LLC*,
683 F. Supp. 3d 571 (E.D. Tex. 2023) ......................................................................... 32

*Haynes v. Haynes*,
178 S.W.3d 350 (Tex. App.—Houston [14th Dist.] 2005) ........................................... 29

*Hermann Hosp. v. MEBA Med. & Benefits Plan*,
845 F.2d 1286 (5th Cir. 1988) ............................................................................... 27, 28

*Hollingshead v. Aetna Health Inc.*,
589 F. App'x 732 (5th Cir. 2014) ................................................................................. 24

*Jensen v. AT & T Corp.*,
2007 WL 2199714 (E.D. Mo. 2007) ............................................................................. 31

*Lafleur v. Louisiana Health Serv. & Indem. Co.*,
  563 F.3d 148 (5th Cir. 2009) ................................................................. 24

*Lemons v. Reliance Standard Life Ins. Co.*,
  534 F. App'x 162 (3rd Cir. 2013) .......................................................... 23

*Lyons v. Katy Indep. Sch. Dist.*,
  964 F.3d 298 (5th Cir. 2020) ................................................................. 31

*Manuel v. Turner Indus. Grp., L.L.C.*,
  905 F.3d 859 (5th Cir. 2018) ................................................................. 24

*Marshall v. Whirlpool Corp.*,
  No. 07-CV-534-JHP-TLW, 2010 WL 348344 (N.D. Okla. Jan. 26,
  2010) ...................................................................................................... 31

*Memorial Hosp. Sys. v. Northbrook Life Ins. Co.*,
  904 F.2d 236 (5th Cir. 1990) ....................................................... 27, 28, 29

*Middleton v. Life Ins. Co. of N. Am.*,
  No. CIV.A H-09-CV-3270, 2010 WL 582552 (S.D. Tex. Feb. 12, 2010) ................. 25

*Niles v. Am. Airlines, Inc.*,
  269 F. App'x 827 (10th Cir. 2008) ........................................................ 13

*Pakovich v. Verizon LTD Plan*,
  653 F.3d 488 (7th Cir. 2011) ................................................................. 23

*Perkins v. PM Realty Group, LP*,
  No. H-24-0566, 2024 WL 4171349 (S.D. Tex. Sept. 12, 2024) ................ 28

*Pike v. Hartford Life & Accident Ins. Co.*,
  368 F. Supp. 3d 1018 (E.D. Tex. 2019) ................................................. 13

*Pilot Life Ins. Co. v. Dedeaux*,
  481 U.S. 41 (1987) ................................................................................. 29

*Rhorer v. Raytheon Eng'rs & Constructors, Inc.*,
  181 F.3d 634 (5th Cir. 1999) ................................................................. 24

*Richards v. Hewlett-Packard Corp.*,
  592 F.3d 232 (1st Cir. 2010) ................................................................. 14

*Silk v. Metro. Life Ins. Co.*,
  310 F. App'x 138 (9th Cir. 2009) .......................................................... 23

iv

*St. Luke's Episcopal Hosp. Corp. v. Stevens Transport, Inc.*,
   172 F. Supp. 2d 837 (S.D. Tex. 2000) ............................................................. 27, 28

*Stafford v. True Temper Sports*,
   123 F.3d 291 (5th Cir. 1997) ................................................................................ 25

*Stephenson v. Bon Secours Mercy Health, et al.*,
   Case No. 3:2025-cv-01755 (N.D. Tex.) ............................................................... 32

*Stephenson v. Sun Life Assurance Company of Canada*,
   Case No. 3:25-cv-02493, Doc. 1 (N.D. Tex.) ..................................................... 21

*Stephenson v. Virginia Workers' Compensation Commission, et al.*,
   Case No. 3:2025-cv-02906 (N.D. Tex.) ............................................................... 32

*Stout v. Pathfinder Energy Servs., LLC*,
   No. 14-02457, 2015 WL 3413328 (W.D. La. May 26, 2015) .................................. 22

*Tannenbaum v. Unum Life Ins. Co. of Am.*,
   Civ. No. 03-1410, 2010 WL 2649875 (E.D. Pa. June 30, 2010) .............................. 23

*Tolson v. Avondale Indus., Inc.*,
   141 F.3d 604 (5th Cir. 1998) ............................................................................... 24

*Van Hulle v. Pacific Telesis Corp.*,
   124 F. Supp. 2d 642 (N.D. Cal. 2000) ................................................................ 31

*Varity Corp. v. Howe*,
   516 U.S. 489 (1996) ........................................................................................... 24

*Weiss v. First Unum Life Ins. Co.*,
   2009 WL 1559798 (D.N.J. June 2, 2009) ...................................................... 23, 31

*Weyer v. Twentieth Century Fox Film Corp.*,
   198 F.3d 1104 (9th Cir. 2000) ............................................................................. 31

*Zuckerman v. Fort Dearborn Ins. Co.*,
   No. 2:22-CV-01993-JDW, 2024 WL 3696469 (E.D. Pa. Aug. 7, 2024) ................... 13

**Statutes**

29 U.S.C. § 1132 ...................................................................................................... 24

29 U.S.C. § 1140 ........................................................................................... 12, 22, 25

29 U.S.C. §1144(a) ................................................................................................... 29

42 U.S.C. §§ 12202, 12205, 12203 ................................................................. 30

42 U.S.C. § 12203(b)...................................................................................... 30

Employee Retirement Income Security Act of 1974, 29 U.S.C. §1001 *et seq.* ..................................................................................................*passim*

Tex. Admin. Code § 3.1201(c)......................................................................... 13

## Other Authorities

Federal Rule of Civil Procedure 56 ................................................................. 10

Local Rule 56.3.......................................................................................... 10, 12

Rule 12(b)(6) .................................................................................................. 24

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**
**AND BRIEF IN SUPPORT**

Pursuant to Federal Rule of Civil Procedure 56 and Local Rule 56.3, Defendant Sun Life Assurance Company of Canada ("Sun Life") submits the following motion for summary judgment and brief in support and states:

## I.     SUMMARY

Plaintiff Dr. Sharisse Stephenson, MD, MBA ("Plaintiff") originally filed this suit to recover short term disability ("STD") benefits under a group policy that was issued by Sun Life, which Plaintiff concedes is governed by the Employee Retirement Income Security Act of 1974, 29 U.S.C. §1001 *et seq.* ("ERISA").[1] Subsequently, Plaintiff amended her Complaint to add a grab-bag of federal and state law claims seeking to recover the STD benefits and damages for Sun Life's alleged delay in processing her claim.[2] Plaintiff's allegations do not withstand even the slightest scrutiny, because Sun Life (1) has paid Plaintiff all the STD benefits due to her under the group policy and (2) received Plaintiff's STD claim on June 11, 2025, and approved it 27 days later, on July 8, 2025. The group policy grants Sun Life at least forty-five (45) days to decide a claim:

---

[1] *See* Pl.'s 1st Am. Compl., Doc. 20; Joint Disc. Case Management Plan, Doc. 16 at ¶ a.
[2] *See* Pl.'s 1st Am. Compl., Doc. 20 at pp. 4-8.

> **When will a decision on your claim be made?**
> We will send you a Written notice of decision on your claim within a reasonable time after we receive the claim but not later than 45 days after receipt of the claim. If we cannot make a decision within 45 days after receiving your claim, we will request a 30 day extension as permitted by U.S. Department of Labor regulations. If we cannot render a decision within the extension period, we will request an additional 30 day extension. Any request for extension will specifically explain:
>
> - the standards on which entitlement to benefits is based;
> - the unresolved issues that prevent a decision on the claim; and
> - the additional information needed to resolve those issues.
>
> If a period of time is extended because you failed to provide necessary information, the period for making the benefit determination is tolled from the date we send notice of the extension to you until the date on which you respond and provide the requested information. You will have 45 days to provide the specified information.

Additionally, although Plaintiff has <u>not</u> pled any such claims, she has served discovery that appears to allege that Sun Life somehow wrongfully denied her request for leave under the Family Medical Leave Act ("FMLA") and violated the American with Disabilities Act ("ADA"). Any such claim is without merit. Under both the FMLA and the ADA, only employers are subject to liability. Here, Plaintiff's employer, and <u>not</u> Sun Life, made all decisions regarding her request for leave under the FMLA and any accommodation under the ADA.[3] Thus, even if Plaintiff attempts to assert such claims in response to this motion, which would be untimely, they will also fail as a matter of law.

## II.   THE PARTIES' LIVE PLEADINGS

Pursuant to the Court's September 16, 2025, Initial Scheduling Order (Doc. 18),[4] Sun Life identifies the parties' live pleadings:

1.    Plaintiff's First Amended Complaint (Doc. 20), filed on September 23, 2025.

---

[3] In fact, Plaintiff filed suit against her employer regarding these allegations in a separate lawsuit, styled *Dr. Sharisse Stephenson, MD, MBA v. Bon Secours Mercy Health, Donna Lohr, Vishwas Patel, MD, Anand Kapur, MD, and Michelle Pyka, MD.,* No. 25-cv-1755-S, in the Northern District of Texas, Dallas Division.
[4] The Initial Scheduling Order was amended with respect to some deadlines on January 6, 2026. [Doc. 29.]

2. Sun Life's Original Answer to Plaintiff's First Amended Complaint (Doc. 21), filed on October 7, 2025.

## III. GROUNDS FOR SUMMARY JUDGMENT

Pursuant to Local Rule 56.3, Sun Life states that Plaintiff's claims fail as a matter of law for the following reasons:

1. Section 1132(A)(1)(B) claim under ERISA for denial of STD benefits fails because Sun Life has paid Plaintiff all STD benefits due under the group policy;

2. Section 1109 claim under ERISA for breach of fiduciary duty fails because Sun Life has paid Plaintiff all STD benefits due under the group policy and Plaintiff has a legal remedy for the alleged denial of benefits;

3. Section 1140 claim under ERISA for Interference with Protected Rights fails because Sun Life has paid Plaintiff all STD benefits due under the group policy and Plaintiff's employer, and not Sun Life, made all decisions regarding her requests for accommodation and leave of absence;

4. Violation of the Texas Insurance Code claim fails because it is preempted by ERISA and Sun Life timely paid Plaintiff's claim for STD benefits in full;

5. Breach of the Duty of Good Faith and Fair Dealing claim fails because it is preempted by ERISA and Sun Life timely paid Plaintiff's claim for STD benefits in full;

6. Violation of Texas Deceptive Trade Practices Act claim fails because it is preempted by ERISA and Sun Life timely paid Plaintiff's claim for STD benefits in full;

7. Texas Tortious Interference with Business Relationship claim fails because it is preempted by ERISA and Sun Life timely paid Plaintiff's claim for STD benefits in full;

8. Texas Tortious Interference with Contract claim fails because it is preempted by ERISA and Sun Life timely paid Plaintiff's claim for STD benefits in full;

9. Interference Claim Under the Americans with Disabilities Act claim fails because Sun Life is not a covered entity under the ADA; and

10.  Violation of Pennsylvania Unfair Trade Practices Consumer Protection Law claim fails because it is preempted by ERISA and Sun Life timely paid Plaintiff's claim for STD benefits in full.

## IV.  STANDARDS FOR RESOLUTION OF THE PARTIES' DISPUTE

The Parties agree that this dispute is governed by ERISA. *See* Pl.'s 1st Am. Compl., Doc. 20, p. 1. In *Ariana M. v. Humana Health Plan of Texas, Inc.*, 884 F.3d 246 (5th Cir. 2018) (en banc), the Fifth Circuit adopted the majority approach and decided that factual determinations in ERISA cases should be reviewed under a *de novo* standard of review when there is no argument that there has been a delegation of authority to the claims administrator.  For the limited purpose of this action only, Sun Life stipulates that the *de novo* standard of review applies to this action.[5]

Under the *de novo* standard of review, the Court's task "is to determine whether the administrator made a correct decision."  *Pike v. Hartford Life & Accident Ins. Co.*, 368 F. Supp. 3d 1018, 1030–31 (E.D. Tex. 2019) (citing *Niles v. Am. Airlines, Inc.*, 269 F. App'x 827, 832 (10th Cir. 2008) (quoting *Hoover v. Provident Life and Accident Ins*. Co., 290 F.3d 801, 808–09 (6th Cir. 2002)).  Sun Life's decision to terminate benefits is not afforded deference or a presumption of correctness.  *Niles*, 269 F. App'x at 832.  Instead, the Court must, in a *de novo* review, "independently weigh the facts and opinions in the administrative record to determine whether the claimant has met his burden of showing

---

[5] The Group Policy grants Sun Life discretion to interpret and enforce the provisions of the Group Policy. [APP 133, 155.] While Texas has banned discretionary clauses in disability income insurance policies offered, issued, renewed, or delivered on or after February 1, 2011, Tex. Admin. Code § 3.1201(c), the Group Policy is governed by Pennsylvania law [APP 127, 135], which does not ban such grants of discretionary authority. *See Zuckerman v. Fort Dearborn Ins. Co.*, No. 2:22-CV-01993-JDW, 2024 WL 3696469, at *3 (E.D. Pa. Aug. 7, 2024) (applying abuse of discretion standard of review in presence of discretionary clause). Nevertheless, and in the interest of narrowing parties' dispute, Sun Life stipulates to a *de novo* review in this action only.

---

that he is disabled within the meaning of the policy." *Richards v. Hewlett-Packard Corp.*, 592 F.3d 232, 239 (1st Cir. 2010).

Importantly, and although the Fifth Circuit in *Ariana M.* determined that factual determinations in ERISA cases should be reviewed under a *de novo* standard of review when there is no delegation of authority to the claims administrator, the Fifth Circuit reaffirmed its position that the scope of judicial review is still limited to the information before the claims administrator at the time it made its decision. *See Ariana M.*, 884 F.3d at 254. Indeed, the Fifth Circuit noted that "[c]hanging the standard of review <u>does not require us to alter our precedent concerning the scope of the record in ERISA cases</u>." *Id.* at 256 (emphasis added).[6]

## V.    STATEMENT OF UNDISPUTED MATERIAL FACTS[7]

The administrative record conclusively demonstrates that Sun Life is entitled, as a matter of law, to judgment in its favor on Plaintiff's claims based upon the following undisputed material facts:

### A.    The Group Disability Insurance Policy

Effective January 1, 2019, Bon Secours Mercy Health, Inc. ("Bon Secours"), by way of policyholder Sagewell Healthcare Benefits Trust, established and maintained a group disability insurance policy for its eligible employees. [APP 127-158.] Specifically, Bon Secours' employees were eligible for, among other things, STD benefits under Sun

---

[6] Moreover, this limited review is required under the Group Policy: "In any legal proceedings, the Court is limited in its review to the administrative record compiled by Sun Life prior to its final claim determination." [APP 155.]

[7] Sun Life's Appendix in Support of its Motion for Summary Judgment (the "Appendix") is being filed contemporaneously and is incorporated by reference. The Appendix contains certain redacted information, including personal identifying information of Plaintiff Dr. Sharisse Stephenson, MD, MBA. Citation will be made to the exhibits, and, where relevant, page number of the Appendix where the relevant evidence may be found.

Life's group policy no. 247667-002 (the "Group Policy"). Dr. Stephenson, as an employee of Bon Secours, was provided STD coverage under the Group Policy. To submit a claim for STD coverage, the Group Policy requires:

> **How is a claim submitted?**
> To submit a claim, you or someone on your behalf must send us Written notice and Proof of claim on our form within the time limits specified. Your Employer has the notice and Proof of claim forms.

[APP 149.] Proof of claim is defined by the Group Policy as follows:

> **What is considered Proof of claim?**
> Proof of claim must consist of at least the following information:
> - a description of the loss or disability;
> - the date the loss or disability occurred;
> - the cause of the loss or disability;
> - evidence demonstrating the disability and should include at least Hospital records, Physician records, psychiatric records, x-rays, narrative reports, or lab, toxicology or other diagnostic testing materials as appropriate for the disabling condition;
> - police reports;
> - incidence reports from your Employer;
> - payroll records from your Employer; and
> - copies of your wage or earnings statements.

[APP 149.] The Group Policy grants Sun Life at least forty-five (45) days to adjudicate a claim. [APP 150.]

**B.      Sun Life Also Provides Bon Secours Certain Administrative Services related to Recordkeeping for Workplace Accommodations provided by Bon Secours to their Employees**

In addition to providing fully insured group STD insurance benefits to Bon Secours for its employees, Sun Life also provides Bon Secours certain administrative and recordkeeping services related to Bon Secours' employees' requests for workplace accommodations.    [APP 971 ¶ 4.] These services are solely limited to assisting Bon Secours with gathering and storing medical documentation related to the requests for workplace accommodations, providing limited assistance with its interactive process with

its employees, and documenting Bons Secours decision(s) with regard to the decisions that it (Bon Secours) makes about employees' accommodation requests. [–APP 971 ¶ 4, 922-25.] Significantly, Bon Secours, and not Sun Life, makes **all** decisions regarding its employees' requests for accommodation and leaves of absence. [APP 972 ¶ 5.]

## C.      Plaintiff's Request for Workplace Accommodation

On May 20, 2025, Sun Life was notified by telephone that Plaintiff was making the following workplace accommodation requests from her employer, Bons Secours: (1) a change in clinical setting; (2) reassignment to work at a different location; and (3) more time per patient visits. [APP 972 ¶ 8, 983-84.] Sun Life acknowledged Plaintiff's workplace accommodation request by letter to her dated May 22, 2025 and advised that "[her] employer will make a decision." [APP 999-1023.]   On June 10, 2025, Bon Secours advised Sun Life by email that it had decided to deny the Plaintiff's requests and that Bon Secours was, instead, providing Plaintiff "continuous leave" as a reasonable accommodation. [APP 973 ¶ 12, 1071-75; *see also* APP 1086-87.]  Bon Secours informed Sun Life that it was approving a leave as accommodation commencing May 28, 2025 through June 24, 2025, which was Plaintiff's next medical appointment. [APP 1072.]  Bon Secours planned to evaluate whether to approve additional leave after receiving an update about Plaintiff's medical condition when she attended her June 24, 2025 appointment.  [*See* APP 1074.]  As instructed by Bon Secours and as part of the administrative services Sun Life provides to Bon Secours in relation to workplace accommodations, Sun Life prepared and sent a letter dated June 11, 2025 to Plaintiff informing her that Bon Secours had denied

her requests for workplace accommodations but that Bon Secours was approving a leave of absence from May 28, 2025 through June 24, 2025.[8]  [APP 1086-87.]

### D.    Plaintiff's Claim for STD Benefits

When an employee of Bons Secours requests or receives an unpaid continuous leave of absence due to a medical condition, Sun Life opens a claim for STD benefits under the Group Policy. [APP 974 ¶ 14.]   In that regard, leave as accommodation is completely different than a claim for short term disability income replacement benefits.   STD is focused only on income replacement.  It offers no job protection and is not a "leave."   In contrast, leave as accommodation offers job protection and authorizes leave but it is unpaid. Plaintiff's claim for STD income replacement benefits was opened on June 11, 2025 (the "Claim"). [APP 974 ¶ 14; APP 811-822.] Specifically, Plaintiff advised that she suffered from a mental illness incurred on May 27, 2025. [APP 86-87.]

### E.    Sun Life Processes the Claim

Sun Life immediately began processing Plaintiff's claim for STD benefits.  While Sun Life had possession of a medical certification that had been submitted in support of Plaintiff's request for workplace accommodations, this medical certification was not sufficient to support a claim for STD benefits because it did not contain any information suggesting that Plaintiff was disabled from her occupation because of her medical condition.  [APP 974 ¶ 15.]  To the contrary, the medical certification stated that Plaintiff could work and perform her essential job functions with three workplace accommodations.

---

[8] Once Bon Secours received additional medical information regarding Plaintiff, it decided to extend its approval of the leave through November 25, 2025. [APP 918-20.]

---

In particular, on or about May 28, 2025, Sun Life had received an Accommodation Medical Certification dated May 27, 2025 (the "5/27/2025 Accommodation Medical Certification") which stated that Ashley Toutounchi, M.D. was recommending the following workplace accommodations:

a. Relocating Plaintiff to a different clinical site or to an office environment to reduce her anxiety stressors to include providing a stable and safe environment with minimal distractions.

b. Structured work schedule and protected lunch breaks to avoid elevating her anxiety, depression and ADHD disorders;

c. Flexibility in Plaintiff's work schedule for occasional telehealth visits to address documentation or backlogs.

[APP 973 ¶ 10, 1028-31.] Dr. Toutounchi also stated that Plaintiff had "no job limitations." [APP 1030.] Therefore, this medical certification did not establish that Plaintiff was disabled by her medical condition which is a fundamental requirement for a short term disability claim.

Sun Life asked Plaintiff to have her health care provider complete an STD Attending Physician Statement ("APS") form which is a medical certification that is used for STD claims. [APP 30; *see* APP 91, 576.] The APS requests information that is relevant to determining whether a claimant is disabled from working in her occupation because of a medical condition. [*See* APP 804-06.] Despite repeated requests, as of June 17, 2025, Plaintiff had not submitted the required APS or any medical records at all which demonstrated that she was totally disabled and unable to work. [*See* APP 91, 576.] Therefore, by facsimile dated June 17, 2025, Sun Life requested that Plaintiff's treating provider, Aura MD, submit an APS. [APP 803-06.]

On June 26, 2025, Sun Life received a Medical Inquiry Form Related To An Accommodation Request (the "Medical Certification") completed by Plaintiff's psychiatrist, Dr. Chevelle Brudey ("Dr. Brudey"), wherein she opined that Plaintiff had a temporary mental health impairment which affected her job function. [APP 182-90.] Dr. Brudey recommended continuous leave beginning on May 28, 2025.  [APP 187.] Unfortunately, however, the medical certification did not provide any "end date." [APP 187.]  That is, it did not provide an estimate on when Plaintiff could return to work. [APP 187.]

On July 1, 2025, Sun Life asked Dr. Brudey to submit a fully completed Provider Questionnaire as well as treatment records. [APP 314-16.]  Additionally, on July 2, 2025, Sun Life asked Plaintiff to complete a Claimant Questionnaire, which Plaintiff still had not done. [APP 317-21.]

On July 2, 2025, Sun Life received another copy of Dr. Brudey's Medical Certification along with a cover page stating that an appropriate date range for Plaintiff's continuous leave began on May 28, 2025, and would end on November 28, 2025. [APP 323-24.]  While the new cover page for the medical certification contained the required dates, the signature line for the Healthcare Provider to sign on the cover page was left blank and not signed. [APP 324.]

On or about July 8, 2025, Sun Life received another copy of the Medical Certification along with the same cover page that now contained Dr. Brudey signature. [APP 433-34.]

_____

### F.      Sun Life Pays the Claim

On July 9, 2025, immediately after finally receiving a fully complete copy of the Medical Certification, Sun Life approved the Claim.  Sun Life sent a letter dated July 9, 2025 to Plaintiff advising her that her claim for STD Benefits were approved effective May 28, 2025 based on the completed Medical Certification that was received on July 8th. [APP 470-71.]  On July 10, 2025, Sun Life deposited $37,500 into Plaintiff's bank account representing all STD benefits payable to date. [APP 538.] By letter dated July 31, 2025, Sun Life advised Plaintiff that it approved her Claim through September 22, 2025. [APP 627.]

### G.      Plaintiff Advises Sun Life She is No Longer Seeking STD Benefits

Significantly, and despite Plaintiff's claims in this lawsuit, by email dated August 30, 2025, Plaintiff advised Sun Life's counsel that she is no longer seeking STD benefits:

> I'm writing to formally notify you that I currently do not require short-term disability benefit payments.

[APP 751; *see* APP 33.] Out of an abundance of caution, by letter dated October 3, 2025, Sun Life's counsel asked Plaintiff's counsel to confirm that Plaintiff was not seeking additional STD benefits under the Group Policy:

> This letter confirms that [Plaintiff] is not seeking short term disability benefits under [the Group Policy] after September 22, 2025. If I am incorrect, please contact me immediately.

[APP 752.] Plaintiff's counsel did not respond. [*See* APP 744-50.] Finally, by letter dated October 8, 2025, and email the following day, Sun Life once again attempted to confirm that Plaintiff was not seeking STD benefits beyond September 22, 2025. [APP 738, 744-46.] Plaintiff's counsel again failed to respond. [*See* APP 744-50.] Accordingly, by letter

dated November 14, 2025, Sun Life closed the Claim effective September 22, 2025. [APP 753.] Simply put, it is undisputed that Plaintiff has received all STD benefits owed to her under the Group Policy from May 28, 2025, to September 22, 2025.

**H.    This Lawsuit**

Before Sun Life could complete processing her Claim, Plaintiff initiated this lawsuit on July 3, 2025. [Doc. 1.] Initially, Plaintiff asserted only federal causes of action, alleging that Sun Life had failed to pay her STD benefits and delayed her Claim. [*See id*.] Then, on July 29, 2025, Plaintiff filed another lawsuit against Sun Life in Texas state court (the "State Court Action").[9] Therein, Plaintiff asserted three state law claims (violation of the Texas Insurance Code; violation of the Deceptive Trade Practices Act; and bad faith insurance practices), alleging that Sun Life "failed to act in good faith and issued a premature denial" of her Claim.[10] Sun Life removed the State Court Action to the Northern District of Texas and successfully sought consolidation with the instant suit on the basis that both lawsuits are based on Plaintiff's allegation that Sun Life wrongfully denied her STD Claim.[11]

Despite receiving all STD benefits owed under the Claim, Plaintiff now alleges ten "counts" by way of her live pleading:

  1.    Section 1132(A)(1)(B) claim for denial of benefits;
  2.    Section 1109 claim for breach of fiduciary duty;
  3.    Section 1140 claim for Interference with Protected Rights;
  4.    Violation of the Texas Insurance Code;
  5.    Breach of the Duty of Good Faith and Fair Dealing;
  6.    Violation of Texas Deceptive Trade Practices Act;

---

[9] *Stephenson v. Sun Life Assurance Company of Canada*, Case No. 3:25-cv-02493, Doc. 1 (N.D. Tex.).
[10] *Id.*
[11] *Stephenson v. Sun Life Assurance Company of Canada*, Case No. 3:25-cv-02493, Docs. 1, 5, & 8.

7.      Texas Tortious Interference with Business Relationship;
8.      Texas Tortious Interference with Contract;
9.      Interference Claim Under the Americans with Disabilities Act; and
10.     Violation of Pennsylvania Unfair Trade Practices Consumer Protection Law.

[Doc. 20, pp. 3-8.] With respect to Count I, Plaintiff alleges that Sun Life has failed to pay STD benefits due under the Group Policy. [*Id.* at p. 3.] With respect to Counts II-X, Plaintiff alleges that Sun Life improperly handled/delayed her Claim. [*Id.* at pp. 3-8.] For the reasons stated below, the Court should dismiss all of Plaintiff's claims with prejudice.

## VI.    ARGUMENT AND AUTHORITIES

### A.    Plaintiff's Claims Fail as A Matter of Law

#### 1.    Count I (Wrongful Denial of Benefits) Fails Because Sun Life Paid the Claim.

Before Sun Life could decide her Claim, Plaintiff filed this Lawsuit and asserted a claim for unpaid benefits against Sun Life pursuant to Section 1132(a)(1)(B). [Doc. 20 at p. 3.] As set forth above, Sun Life has fully and timely paid the Claim. [APP 12-16.]

In an ERISA case, "a defendant's reinstatement of a plaintiff's benefits renders moot a complaint seeking such benefits." *Stout v. Pathfinder Energy Servs., LLC*, No. 14-02457, 2015 WL 3413328, at *3 (W.D. La. May 26, 2015) (dismissing beneficiary's claim for LTD benefits as moot when his benefits were fully and completely reinstated); *see also Lemons v. Reliance Standard Life Ins. Co.*, 534 F. App'x 162, 164 (3rd Cir. 2013) (holding that allegation that the plan administrator had arbitrarily terminated LTD benefits of plan participant was resolved when participant's benefits were reinstated while case was pending); *Pakovich v. Verizon LTD Plan*, 653 F.3d 488, 492 (7th Cir. 2011) (holding that plaintiff's benefit claim became moot when plan paid it in full); *Silk v. Metro. Life Ins. Co.*,

310 F. App'x 138, 139 (9th Cir. 2009) ("We agree with the district court that MetLife's payment of 'own occupation' LTD benefits to Silk moots his claim to such benefits."); *Tannenbaum v. Unum Life Ins. Co. of Am.*, Civ. No. 03-1410, 2010 WL 2649875, at \*7 (E.D. Pa. June 30, 2010) (dismissing as moot plaintiff's § 1132(a)(1)(B) claim because defendant paid, and continued to pay, benefits due to plaintiff under the plan); *Weiss v. First Unum Life Ins. Co.*, 2009 WL 1559798, at \*1 (D.N.J. June 2, 2009) (acknowledging that reinstatement and continued payment of plaintiff's LTD benefits mooted plaintiff's claim that defendant wrongfully denied plaintiff's benefits in violation of ERISA).

Plaintiff filed this lawsuit approximately one week before Sun Life had received the necessary Medical Certification and paid her Claim. As set forth above, once Sun Life received the required medical documentation, it immediately approved and paid her Claim. [APP 13-15.] As such, there is no further relief that the Court can award Plaintiff on her claim for past benefits, and she has conceded several times she is not seeking STD benefits beyond what has been paid.[12] Accordingly, the Court should grant summary judgment as to Count I.

### 2.    Count II (ERISA Breach of Fiduciary Duty) Fails as a Matter of Law

Although ERISA permits an individual to assert a breach of fiduciary claim under § 502(a)(3), such claims are limited to very specific circumstances, none of which are

---

[12] Even if Sun Life had delayed in deciding and/or paying her Claim (it did not), and that such could be deemed a "procedural irregularity," the Fifth Circuit has clearly stated Plaintiff's remedy: "Remand to the plan administrator for full and fair review is usually the appropriate remedy when the administrator fails to substantially comply with the procedural requirements of ERISA." *Lafleur v. Louisiana Health Serv. & Indem. Co.*, 563 F.3d 148, 157 (5th Cir. 2009). Here, Sun Life has already reviewed, approved, and fully paid the Claim—there is nothing for Sun Life to review on remand.

---

alleged in Plaintiff's First Amended Complaint. Under § 502(a)(3), a plaintiff may obtain "appropriate equitable relief for injuries caused by violations of ERISA that § 502 does not elsewhere adequately remedy." *Varity Corp. v. Howe*, 516 U.S. 489, 512 (1996). The Fifth Circuit interprets *Varity* as holding that "an ERISA plaintiff may bring a private action for breach of fiduciary duty only when no other remedy is available under 29 U.S.C. § 1132." *Rhorer v. Raytheon Eng'rs & Constructors, Inc.*, 181 F.3d 634, 639 (5th Cir. 1999). Significantly, a claimant "whose *injury* creates a cause of action under [§ 502(a)(1)(B)] may not proceed with a claim under [§ 502(a)(3)]." *Manuel v. Turner Indus. Grp., L.L.C.*, 905 F.3d 859, 865 (5th Cir. 2018). By examining the underlying *injury*, one can determine whether a given claim is duplicative. This requires courts to "focus on the substance of the relief sought and the allegations pleaded, not on the label used." *Gearlds v. Entergy Serv., Inc.*, 709 F.3d 448, 452 (5th Cir. 2013). Therefore, a plausible claim for relief under § 1132(a)(1)(B), even, where as here, the claim ultimately does not prevail, precludes the claimant from asserting a viable claim under § 1132(a)(3). *Tolson v. Avondale Indus., Inc.*, 141 F.3d 604, 610 (5th Cir. 1998); *see also Hollingshead v. Aetna Health Inc.*, 589 F. App'x 732, 737 (5th Cir. 2014) (agreeing on review of a dismissal under Rule 12(b)(6) that plaintiff failed to state a claim under § 1132(a)(1)(B) but nevertheless holding that plaintiff could not maintain a breach of fiduciary-duty claim under § 1132(a)(3)). Under this line of authority, Plaintiff's breach of fiduciary duty claim fails because it is nothing more than a claim for STD benefits and statutory damages, which is legal relief. (*See, e.g.*, Doc. 20 ¶¶ 1-10 (*e.g.*, plaintiff seeks immediate payment of all back benefits owed, plus interest; statutory damages under ERISA). Such relief—the plan

benefits that Plaintiff seeks—is not "appropriate equitable relief" and Plaintiff's breach of fiduciary duty claim fails.[13]

### 3.      Count III (Interference with Protected Rights Under ERISA) Fails

Section 510 prohibits retaliating against an employee for exercising an ERISA right and preventing that employee from attaining benefits to which he would become entitled under a pension benefit plan. 29 U.S.C. § 1140; *Stafford v. True Temper Sports,* 123 F.3d 291, 295 (5th Cir. 1997); *Clark v. Resistoflex Co.,* 854 F.2d 762, 770 (5th Cir.1988). To recover under section 510, the plaintiff must make a prima facie showing of the following: (1) adverse employer action (2) taken for the purpose of interfering with the attainment of (3) any right to which the employee is entitled. *Bodine v. Employers Cas. Co.,* 352 F.3d 245, 250 (5th Cir.2003).

Here, it is simply not possible to conclude that Sun Life took an adverse action against Plaintiff with the specific intent to interfere with her attainment of ERISA benefits when it fully paid Plaintiff's Claim. Moreover, to the extent Plaintiff is basing this claim on the denial of her requests for workplace accommodation or leave, it is undisputed those decisions were made by her employer, Bon Secours, and not Sun Life. Based on the foregoing, Plaintiff's claim for interference fails as a matter of law.

---

[13] Plaintiff's claim for breach of fiduciary duty also fails for additional reasons. Plaintiff asserts Count II pursuant to Section 1109; however, "Section 1109 itself does not provide an independent cause of action on the part of beneficiaries [or participants] for individual compensatory damages." *Ducre v. SBC–Southwestern Bell*, 402 F. Supp. 2d 766, 771 (W.D. Tex. 2005) (citing *Massachusetts Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 140, 147 (1985) (holding § 1109 authorizes only actions on behalf of the ERISA plan itself as a whole and provides no implied cause of action for extracontractual damages caused by improper claims processing)); *Middleton v. Life Ins. Co. of N. Am.*, No. CIV.A H-09-CV-3270, 2010 WL 582552, at *5 (S.D. Tex. Feb. 12, 2010). Moreover, as set forth above, Sun Life timely paid Plaintiff's claim for STD benefits.

---

### 4.    Plaintiff's State Law Claims (Counts IV-VIII & X) Fail Both Legally and Factually.

Plaintiff asserts a host of state law causes of action all based on her allegation that Sun Life improperly handled her Claim. [Pl.'s 1st Am. Compl., pp. 5-6, 8.] Such claims are completely and/or expressly preempted because Plaintiff seeks STD benefits under an ERISA plan as her remedy. *See id.*; Joint Disc. Case Management Plan, Doc. 16 at ¶ a. And even if Counts IV-VIII and X were not preempted (they are), Sun Life properly adjudicated the Claim when it approved same within the deadlines prescribed in the Group Policy.

### a.    These Claims are Completely Preempted.

ERISA is a comprehensive statutory scheme that governs the regulation and enforcement of rights under employee benefit plans. *Aetna Health Inc. v. Davila*, 542 U.S. 200, 208 (2004). As such, a state law claim, however characterized or pleaded, that "duplicates, supplements, or supplants" the civil enforcement remedies available under ERISA conflicts with Congress' intent to make the ERISA remedy exclusive and is therefore preempted. *Id*. at 209. Indeed, ERISA's "civil enforcement mechanism is one of those provisions with such 'extraordinary pre-emptive power' that it 'converts an ordinary state common law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule.'" *Id*. (quoting *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 65-66 (1987)).

In *Davila*, the Supreme Court held that ERISA completely preempts a plaintiff's cause of action if (1) the plaintiff could have brought the claim under ERISA's enforcement provisions, and (2) there is no other independent legal duty implicated by the defendant's

actions. *Id*. at 210. Applying the *Davila* test to the facts of this case leaves no doubt that Plaintiff's claims are preempted, and numerous cases have repeatedly found similar claims pre-empted. *See, e.g., Memorial Hosp. Sys. v. Northbrook Life Ins. Co*., 904 F.2d 236 (5th Cir. 1990) ("We have also held in this circuit that ERISA preempts state law claims, based on breach of contract, fraud, or negligent misrepresentation, that have the effect of orally modifying the express terms of an ERISA plan and increasing plan benefits for participants or beneficiaries who claim to have been misled."); *Hermann Hosp. v. MEBA Med. & Benefits Plan*, 845 F.2d 1286, 1290 (5th Cir. 1988); *Ambulatory Infusion Therapy Specialists, Inc. v. Aetna Life Ins. C*o., No. CIV.A. H-05-4389, 2006 WL 1663752, at *4 (S.D. Tex. June 13, 2006); *St. Luke's Episcopal Hosp. Corp. v. Stevens Transport, Inc.,* 172 F. Supp. 2d 837, 841 (S.D. Tex. 2000) (breach of contract and Texas Insurance Code claims were "derivative claims arising from [the plan member's] rights under the policy" and the claims therefore sought to hold defendants "liable for failing to effectuate those rights" and were therefore completely preempted).

It is fundamental that Plaintiff's claims for the payment of ERISA benefits and Sun Life's claims handling are preempted by ERISA. It is simply undisputed that Plaintiff, a participant in an ERISA plan, is asserting various state law claims to recover benefits available under the Group Policy. In this regard, she alleges Sun Life "[r]efus[ed] to pay a claim," "den[ied] Plaintiff's claim without a reasonable basis," and "unreasonably den[ied] her benefits." [Pl.'s 1st Am. Compl., pp. 5-6, 8.] This scenario falls squarely within the complete preemption framework under *Davila*. *Davila*, 542 U.S. at 214-15 (fact that state law cause of action attempts to authorize remedies beyond those authorized by ERISA does

not put the cause of action outside ERISA's civil enforcement provisions for purposes of complete preemption analysis). Therefore, federal courts routinely hold that state-law claims such as those asserted by Plaintiff are completely preempted. *See Memorial Hosp. Sys.*, 904 F.2d at 245; *Hermann Hosp.*, 845 F.2d at 1290; *Ambulatory Infusion Therapy Specialists*, 2006 WL 1663752, at \*4; *St. Luke's Episcopal Hosp. Corp.*, 172 F. Supp. 2d at 841.

Moreover, Plaintiff's claims for tortious interference of "business relationship/contract" are all based on Sun Life's alleged failure to pay her timely STD benefits, and are therefore also preempted:

> Defendant's failure to abide by its obligations under the plan and otherwise acts to harm Plaintiff arising from its improper handling of her claim for benefits was thus intentional interference with her business relationship/contract with an improper means of motive including that of attempting to deprive Plaintiff of timely and proper payment of the plan benefits she was entitled to.

[Pl.'s 1st Am. Comp., Doc. 20 p. 7.]   Courts have routinely held that the tortious interference causes of action that are based on the insurer's claims handling are preempted by ERISA. *Perkins v. PM Realty Group, LP,* No. H-24-0566, 2024 WL 4171349, at \*11 (S.D. Tex. Sept. 12, 2024) (tortious interference with business relationship claim preempted where plaintiffs alleged they had suffered injury because of insurers denial of benefits and claims handling); *Haynes v. Haynes,* 178 S.W.3d 350, 353 (Tex. App. – Houston [14th Dist.] 2005) (tortious interference with contract claim preempted where plaintiff alleged interference resulted in delay of payment of benefits).

Plaintiff does not offer any argument in the First Amended Complaint or otherwise that ERISA preemption does not apply. To the contrary, she affirmatively pleads that she seeks STD benefits and complains of Sun Life's claims handling. Because they are completely preempted, Plaintiff's state law claims must be dismissed. *See, e.g.*, *Memorial Hosp. Sys.*, 904 F.2d at 245.

### b.      These Claims are Expressly Preempted.

In addition to the complete preemption doctrine, Plaintiff's state-law claims are also subject to dismissal based on the defense of "ordinary" or "conflict" preemption. In this regard, § 514 of ERISA contains an expansive express preemption provision that states: "[e]xcept as provided in subsection (b) of this section, the provisions of this subchapter and subchapter III shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan …." 29 U.S.C. §1144(a). *See generally Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41 (1987). Plaintiff's common-law claims for breach of the duty of good faith and fair dealing, violations of the Texas Insurance Code, and violations of Texas and/or Pennsylvania's consumer protection laws, undoubtedly relate to the ERISA plans and therefore meet the criteria for preemption under ERISA § 514. *See, e.g.*, *Dedeaux*, 481 U.S. at 47-48. For this reason as well, Plaintiff's state law claims should be dismissed.

### c.      Sun Life Properly Handled the Claim Pursuant to the Group Policy.

Independent of the foregoing, the thrust of Plaintiff's state law claims is her allegation that Sun Life unreasonably delayed in processing and/or paying the Claim;

however, this is demonstrably untrue. The Group Policy expressly grants Sun Life at least forty-five (45) days to adjudicate a claim. [APP 150.] Sun Life approved Plaintiff's Claim in twenty-seven (27) days: it received the Claim on June 11, 2025, and approved it on July 8, 2025, as soon as it received the required medical documentation. [APP 4-17.] Moreover, Sun Life timely remitted STD benefits to Plaintiff. [APP 12-16.] As such, Plaintiff's state law claims fail as a matter of law.

> **5.      Count IX (Interference under the ADA) Fails Because Sun Life is Not a "Covered Entity" under the ADA and It <u>Did Not Make any Employment Decision.</u>**

Plaintiff asserts a Section 12203 claim against Sun Life under the ADA. The ADA prohibits discrimination in three areas: employment (Subchapter I); public services (Subchapter II); and public accommodations (Subchapter III). Subchapter IV sets forth miscellaneous provisions. *See, e.g.*, 42 U.S.C. §§ 12202, 12205, 12203. The retaliation and coercion provisions of Section 12203 appear in this "miscellaneous" subchapter and provide, in relevant part, that "[i]t shall be unlawful to coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of, or on account of his or her having exercised or enjoyed, or on account of his or her having aided or encouraged any other individual in the exercise or enjoyment of, any right granted or protected by this chapter." 42 U.S.C. § 12203(b).

Courts across the country have routinely held that claims administrators of disability policies are not employers or purveyors of public services or accommodations such that, as a matter of law, they cannot be "covered entities" under the ADA. *Weyer v. Twentieth Century Fox Film Corp.*, 198 F.3d 1104, 1113 (9th Cir. 2000); *see also Marshall v.*

*Whirlpool Corp.*, No. 07-CV-534-JHP-TLW, 2010 WL 348344, at \*4 (N.D. Okla. Jan. 26, 2010); *Jensen v. AT & T Corp.*, 2007 WL 2199714, \*2 (E.D. Mo. 2007); *Van Hulle v. Pacific Telesis Corp.*, 124 F. Supp. 2d 642, 643, n. 4 (N.D. Cal. 2000). Sun Life is/was not Plaintiff's employer. [APP 9.] Sun Life is simply the claims administrator of the Group Policy. As such, it is not a "covered entity" under the ADA and thus cannot be liable for any violation of Section 12203. For this reason, summary judgment against Count IX is appropriate.

Sun Life also did not in any way "act" as Plaintiff's employer.   Sun Life did not make any (1) employment, (2) accommodation, and/or (3) workers' compensation decision with respect to Plaintiff. To establish a prima facie case of retaliation under the ADA, the Plaintiff must show that (1) she "engaged in an activity protected by the ADA," (2) she "suffered an adverse employment action," and (3) "there is a causal connection between the protected activity and the adverse action." *Lyons v. Katy Indep. Sch. Dist.*, 964 F.3d 298, 304 (5th Cir. 2020).  Plaintiff cannot make any such showing.

***First***, Sun Life does not – and did not here -- make any employment decisions for Bon Secours. [*See* APP 972 ¶¶ 4-5]. ***Second***, while Sun Life provides administrative and record-keeping assistance to Bon Secours' process for handling their employees' accommodation requests (including leaves as an accommodation), Bon Secours itself always makes the decision on these requests (whether to approve, deny, or propose an alternative accommodation). [APP 972 ¶ 5; 159-60, 1071-78, 1086-87.]   There is no evidence that Sun Life provided any guidance or directive to Bon Secours at all with regard to whether to approve or deny Plaintiff's accommodation request.  To the contrary, Bon

Secours reviewed and approved Plaintiff's leave of absence request completely independently and informed Sun Life of its decision. [APP 159-60, 1071-74, 1086-87.] *Third*, Sun Life does not assist with Bon Secours' review of workers' compensation claims. [APP 972 ¶ 6.] Indeed, another agent of Bon Secours—Cannon Cochran Management Services, Inc.—decided that Plaintiff's workers' compensation claim did not meet the definition of a compensable claim under Virginia law. [APP 161-63.] As such, Plaintiff cannot demonstrate any adverse action taken (or initiated) by Sun Life against her, much less any causal connection between her Claim and any alleged adverse employment action. *See, e.g.*, *Gray v. Winco Foods, LLC*, 683 F. Supp. 3d 571, 608 (E.D. Tex. 2023) (finding summary judgment against Section 12203 claim appropriate where plaintiff presented no evidence connecting alleged protected activity with an adverse employment action). For this independent reason, summary judgment against Count IX is appropriate.[14]

## VII.   <u>CONCLUSION</u>

For all the reasons addressed herein, Sun Life respectfully requests that the Court grant summary judgment in favor of Sun Life, enter judgment dismissing Plaintiff's claims with prejudice, with costs taxed against her, and provide Sun Life with such other and further relief to which it may show itself justly entitled.

---

[14] As mentioned above, it is important to note that Plaintiff has filed other lawsuits, to which Sun Life is not a party, alleging a myriad of employment/workers' compensation claims. *See Stephenson v. Bon Secours Mercy Health, et al.*, Case No. 3:2025-cv-01755 (N.D. Tex.); *Stephenson v. Bon Secours Medical* Group, Case No. 3:2025-cv-00684 (E.D. Va.); *Stephenson v. Virginia Workers' Compensation Commission, et al.*, Case No. 3:2025-cv-02906 (N.D. Tex.).

Respectfully submitted,


By: /s/ Bill E. Davidoff
     Bill E. Davidoff
     State Bar No. 00790565
     bill.davidoff@figdav.com
     Attorney-in-Charge
     Cameron E. Jean
     State Bar No 24097883
     cameron.jean@figdav.com

FIGARI + DAVENPORT, LLP
901 Main Street, Suite 3400
Dallas, TX 75202
Tel: 214.939.2000
Fax: 214.939.2090

ATTORNEYS FOR DEFENDANT
SUN LIFE ASSURANCE COMPANY OF CANADA


## CERTIFICATE OF SERVICE

I hereby certify that on April 16, 2026, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to all parties who have appeared and registered with CM/ECF.


/s/ Bill E. Davidoff
Bill E. Davidoff